TODD M. MALYNN (SBN 181595)
tmalynn@polsinelli.com
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:  310.556.1801
Facsimile:   310.556.1802

Attorneys for Defendant
PENGUIN MAGIC, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| YIGAL MESIKA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PENGUIN MAGIC, INC., a Nevada corporation, DOES 1-10, inclusive,<br><br>Defendant. | Case No. 2:15-cv-09314-RGK-DTB<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PENGUIN MAGIC, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Judge:      Hon. R. Gary Klausner<br><br>Date:       October 31, 2016<br>Time:       9:00 a.m.<br>Place:      Courtroom 850<br>            255 E. Temple St.<br>            Los Angeles, CA  90012 |

Pursuant to Local Rule 56-1, Defendant Penguin Magic ("Defendant" or "Penguin Magic") respectfully submits this Statement of Uncontroverted Facts and Conclusions of Law in support of Defendant's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment on the Complaint filed by Plaintiff Yigal Mesika's ("Plaintiff" or "Mesika"), and each cause of action asserted therein, and on Penguin Magic's counterclaims of Genericness (First), Fraud (Second and Third), and Naked Licensing (Fourth) and its prayer for a finding that this case is exceptional under 15 U.S.C. § 1117.

1

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF PENGUIN MAGIC'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-CV-9314-RGK-DTB

## STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1.      Registration No. 3,782,721 is for the mark "LOOPS" as used with "magic tricks". | Deming Decl., Ex. A (Registration No. 3,782,721 - DE 39-1) |
| 2.      Registration No. 7,978,477 is for the mark "LOOPS" as used with "DVDs featuring magic and levitations". | Deming Decl., Ex. B (Registration No. 3,978,477 - DE 39-2) |
| 3.      Mesika is a magician who makes and sells gimmicks for use in magic tricks, including loops of invisible elastic thread that he calls LOOPS. | Deming Decl., Ex. C at 9:21-25 (Deposition of Yigal Mesika - DE 39-3) |
| 4.      Invisible elastic thread is very fine thread that can be difficult to see with the naked eye, used by magicians to perform tricks that make it appear as though objects are moving or levitating independently. | Altinsel Decl. ¶ 4 |
| 5.      For some tricks, invisible elastic thread is formed into a circle, one end is laid over the other, and the thread is knotted, forming a loop of thread. | Altinsel Decl. ¶ 4 |
| 6.      Through distributors and retailers, Mesika sells loops of invisible elastic thread. | Deming Decl., Ex. C at 80:9-81:2 (Deposition of Yigal Mesika - DE 39-3) |
| 7.      Mesika's LOOPS product consists of five loops of invisible elastic thread stored on a paper card and accompanied by a set of instructions describing different tricks that can be performed | Deming Decl., Ex. D (Mesika LOOPS Instructions - DE 39-4), Ex. E (Mesika LOOPS - DE 39-5) |

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| using the product. | |
| 8.      The instruction set that accompanies the LOOPS invisible elastic thread product includes such tricks as the "Animated Fork" and the "Haunted Pack." | Deming Decl., Ex. D (Mesika LOOPS Instructions - DE 39-4) |
| 9.      Mesika sells instructional DVDs entitled LOOPS, on which Mesika demonstrates how to perform tricks using loops of invisible elastic thread. | Deming Decl., Ex. F (LOOPS DVD Production Description - DE 39-6) |
| 10.      The tricks taught by Mesika's LOOPS DVDs include the "Floating Cigarette," the "Floating Card," and "The Force." | Deming Decl., Ex. F (LOOPS DVD Production Description - DE 39-6) |
| 11.      None of the tricks described in the instruction set that accompanies the LOOPS invisible elastic thread product or taught by the LOOPS DVDs are called "Loops." | Deming Decl., Ex. D (Mesika LOOPS Instructions - DE 39-4), Ex. F (LOOPS DVD Production Description - DE 39-6) |
| 12.      Mesika does not market any magic tricks called "Loops." | Deming Decl., Ex. G (Mesika Admissions No. 36, 261, 288 - DE 39-7) |
| 13.      The common definition of the word "loops" is "[a] length of line, thread, ribbon, or other thin material that is curved or doubled over making an opening." | Deming Decl., Ex. H (American Heritage Dictionary - DE 39-8) |
| 14.      Ordinary dictionary definitions of loops vary slightly in their wording, but all share a | Deming Decl., Ex. I  (Group Exhibit of Dictionaries - DE |

3

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| common theme: two ends of an object, crossing over each other, leaving an open space within. | 39-9) |
| 15.     For as long as magicians have been tying invisible elastic thread into loops, they have been referring to them as "loops." | Altinsel Decl. ¶ 5 |
| 16.     Consumers and other magicians use the term "loops" interchangeably to describe any such loop of invisible elastic thread. | Altinsel Dec. ¶ 5, Deming Decl., Ex. J (Group Exhibit of Theory11.com Web Forum Posts - DE 39-10), Ex. K (Group Exhibit of Ellusionist.com Web Forum Posts - DE 39-11), Ex. L (Group Exhibit of The Magic Cafe.com Web Forum Posts - DE 39-12) |
| 17.     Consumers use the term "loops" when discussing how to make their own loops of invisible elastic thread—not how to make imitations of Mesika's products. | Altinsel Dec. ¶ 5, Deming Decl., Ex. J (Group Exhibit of Theory11.com Web Forum Posts - DE 39-10), Ex. K (Group Exhibit of Ellusionist.com Web Forum Posts - DE 39-11), Ex. L (Group Exhibit of The Magic Cafe.com Web Forum Posts - DE 39-12) |
| 18.     The term "loops" does not identify who has | Altinsel Dec. ¶ 10, Deming |

4

| Uncontroverted Facts | Supporting Evidence |
| --- | --- |
| made the loop, where it comes from, or who vouches for it. | Decl., Ex. J (Group Exhibit of Theory11.com Web Forum Posts - DE 39-10), Ex. K (Group Exhibit of Ellusionist.com Web Forum Posts - DE 39-11), Ex. L (Group Exhibit of The Magic Cafe.com Web Forum Posts - DE 39-12) |
| 19.     The term "loops" merely describes what the product is regardless of who supplied it. | Altinsel Dec. ¶ 10, Deming Decl., Ex. J (Group Exhibit of Theory11.com Web Forum Posts - DE 39-10), Ex. K (Group Exhibit of Ellusionist.com Web Forum Posts - DE 39-11), Ex. L (Group Exhibit of The Magic Cafe.com Web Forum Posts - DE 39-12) |
| 20.     Performing tricks with loops of invisible elastic thread was originally popularized by a magician named Finn Jon, who is credited as the inventor of the product. | Deming Decl., Ex. D (Mesika LOOPS Instructions - DE 39-4) |
| 21.     In a contract between Jon and Mesika dated June 25, 1998 ("the 1998 Contract"), Finn Jon's name for the product was "*Finn Jon's Elastic* | Deming Decl., Ex. M (1998 Contract - DE 39-13) |

5

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| *Invisible Thread.*" | |
| 22.    The 1998 Contract with Finn Jon is the vehicle by which Mesika purportedly obtained the right to make and sell the product identified as "*Finn Jon's Elastic Invisible Thread.*" | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 23.    The 1998 Contract used loops generically to refer to "*Finn Jon's Elastic Invisible Thread.*" | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 24.    The 1998 Contract included a 3 year exclusivity provision, pursuant to which third parties would "not be authorized . . . the right of making the Finn Jon's loops of invisible thread." | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 25.    The 1998 Contract did not contemplate a trademark right in the term "loops" or use the word "loops" as a source-identifying name. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 26.    Mesika used the word "loops" as the generic description of a tied circle of thread in U.S. Patent No. 7,861,861. | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14) |
| 27.    Mesika used the word "loops" as the generic description of a tied circle of thread in U.S. Patent No. 8,408,394. | Deming Decl., Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 28.    U.S. Patent Nos. 7,861,861 and 8,408,394 are directed to a "[c]ontainer for holding elastic loops." | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 29.    The container disclosed in U.S. Patent Nos. 7,861,861 and 8,408,394 is a sheet, upon which | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF PENGUIN MAGIC'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-CV-9314-RGK-DTB

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| "an elastic loop is placed," together with a separator that covers the "elastic loops" and holds them against the sheet. | 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 30.　U.S. Patent Nos. 7,861,861 and 8,408,394 use the term "loop(s)" is repetitively, almost 200 times, to refer to any loops of invisible elastic thread, and not to products sourced by Mesika. | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 31.　The term "loop(s)" is never used in bold, underlined, or in large font in U.S. Patent Nos. 7,861,861 and 8,408,394. | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 32.　U.S. Patent Nos. 7,861,861 and 8,408,394 explain that "Elastic loops have long been known in the art. By way of example, elastic loops are often considered rubber bands and used to hold items together . . . . [M]agicians have developed elastic loops that are barely visible and used for magic tricks. Such thin loops allow the magician to . . ." | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 33.　According to U.S. Patent Nos. 7,861,861 and 8,408,394, "[w]hen storing such loops, they are typically placed in a box, purse, or other location that results in the loops becoming bunched up and otherwise disorganized." | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 34.　U.S. Patent Nos. 7,861,861 and 8,408,394 allegedly provide a solution to a magicians' need | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| for "a convenient container to hold the loops in a convenient and organized manner." | 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 35.　Throughout U.S. Patent Nos. 7,861,861 and 8,408,394, the terms "loops," "elastic loops," and "invisible elastic loops" are used dozens of times, interchangeably, and not once to refer specifically to tied circles of elastic thread originating from Mesika. | Deming Decl., Ex. N (U.S. Patent No. 7,861,861 - DE 39-14), Ex. O (U.S. Patent No. 8,408,394 - DE 39-15) |
| 36.　Wikipedia's online glossary of magic displays a host of generic magic terms, such as "flash paper", "gimmick", "invisible deck", and "magic dust" and specifically defines the term "loop" in that dictionary as "[a] super-thin elastic string, tied into a small circular loop, worn on the wrist. Used for levitating small, lightweight objects and many PK effects." | Deming Decl., Ex. P (Wikipedia Glossary of Magic - DE 39-16) |
| 37.　Penguin Magic, founded in 2002, is one of the largest Internet retailers of magic products. | Altinsel Dec. ¶ 2 |
| 38.　Penguin Magic sells hundreds of magic products, including Mesika's magic products. | Altinsel Dec. ¶ 2 |
| 39.　Through discovery, the parties identified the following specific set of relevant products sold by Penguin Magic: Innercircle by Yigal Mesika; Loops by Yigal Mesika; Loops by Yigal Mesika (3 pack); Loops Improved by Yigal Mesika; Loops New Generation by Yigal Mesika; Loops Vol. 1-2 | Altinsel Dec. ¶ 11, Deming Decl., Ex. C at 15:14-18:10, 24:3-25:8, 26:13-18 (Deposition of Yigal Mesika - DE 39-3) |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| by Yigal Mesika and Finn Jon (2 DVDs); Loops COMPLETE by Yigal Mesika (2DVD set + 20 Loops); Mesika Elastics by Yigal Mesika; Yigal Mesika's Animated Miracles Book; The Million Dollar Knot (Instant Download + PET2.0); Legacy Thread by Sebashtion (300ft Spool); and As Real As It Gets by Losander (DVD kit). | |
| 40.     Mesika's authorized distributors of Mesika products have included Murphy's Magic Supplies, Inc. | Altinsel Dec. ¶ 12, Deming Decl., Ex. C at 80:25-81:2 (Deposition of Yigal Mesika - DE 39-3) |
| 41.     Mesika's authorized distributors of Mesika products have included Fun Incorporated. | Altinsel Dec. ¶ 12 |
| 42.     Mesika's authorized distributors of Mesika products have included Magic City. | Altinsel Dec. ¶ 12 |
| 43.     Every unit of Innercircle by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 44.     Every unit of Loops by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 45.     Every unit of Loops by Yigal Mesika (3 pack) sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, | Altinsel Dec. ¶ 12 |

9

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| Inc.; Fun Incorporated; or Magic City. | |
| 46.     Every unit of Loops Improved by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 47.     Every unit of Loops New Generation by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 48.     Every unit of Loops Vol. 1-2 by Yigal Mesika and Finn Jon (2 DVDs) by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 49.     Every unit of Loops COMPLETE by Yigal Mesika (2DVD set + 20 Loops) by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 50.     Every unit of Mesika Elastics by Yigal Mesika by Yigal Mesika sold by Penguin Magic was originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | Altinsel Dec. ¶ 12 |
| 51.     Every unit of Yigal Mesika's Animated Miracles Book sold by Penguin Magic was | Altinsel Dec. ¶ 12 |

10

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| originally purchased from one of Murphy's Magic Supplies, Inc.; Fun Incorporated; or Magic City. | |
| 52.    Mesika appears to believe some speculative fraction of these products are items that did not originate from Mesika. | Deming Decl., Ex. T (Declaration of Yigal Mesika - DE 39-20) |
| 53.    Mesika has produced no actual evidence that Penguin Magic has ever sold anything but genuine Mesika products. | *See generally* Compl., DE 1 |
| 54.    Penguin Magic markets and sells products to consumers on its website at www.penguinmagic.com. | Altinsel Dec. ¶ 3 |
| 55.    Penguin Magic does not and has never sold any products—other than Mesika's—bearing the name "LOOPS" whatsoever | Altinsel Dec. ¶ 12 |
| 56.    A user searching Penguin Magic's website for "loops" will get results for Mesika's products and no other invisible elastic thread product or DVD described as "LOOPS". | Deming Decl., Ex. Q (Penguin Magic Website Search Results - DE 39-17) |
| 57.    The Million Dollar Knot is not among the results for a search of the term "loops" on the website. | Deming Decl., Ex. Q (Penguin Magic Website Search Results - DE 39-17) |
| 58.    Legacy Thread is not among the results for a search of the term "loops" on the website. | Deming Decl., Ex. Q (Penguin Magic Website Search Results - DE 39-17) |
| 59.    The As Real As It Gets DVD Kit is not among the results for a search of the term "loops" | Deming Decl., Ex. Q (Penguin Magic Website |

11

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| on the website. | Search Results - DE 39-17) |
| 60.    Penguin Magic uses a "tag" system that assigns relevant keywords to particular products. | Altinsel Dec. ¶ 14 |
| 61.    A product on the Penguin Magic website that may be useful for "close up" magic may be assigned the tag "close-up." | Altinsel Dec. ¶ 14 |
| 62.    A product on the Penguin Magic website that features playing cards may be assigned the tag "card-trick." | Altinsel Dec. ¶ 14 |
| 63.    The Million Dollar Knot is not tagged with the "loops" tag. | Altinsel Dec. ¶ 14 |
| 64.    Legacy Thread is not tagged with the "loops" tag. | Altinsel Dec. ¶ 14 |
| 65.    The As Real As It Gets DVD Kit is not tagged with the "loops" tag. | Altinsel Dec. ¶ 14, Deming Decl., Ex. R (As Real As It Gets Product Page - DE 39-18) |
| 66.    Penguin Magic uses meta "tags" or keywords, which can assist in the indexing of its website by third-party search engines. | Altinsel Dec. ¶ 15 |
| 67.    On each product page on the Penguin Magic website, Penguin Magic uses three categories of meta information: (1) a description; (2) keywords; and (3) product classification. | Altinsel Dec. ¶ 15, Deming Decl., Ex. S (As Real As It Gets Product Page Source Code - DE 39-19) |
| 68.    On each product page on the Penguin Magic website, the "description" meta field consists of | Altinsel Dec. ¶ 15, Deming Decl., Ex. S (As Real As It |

12

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| the first 225 characters of the product's description that is displayed on a given product page. | Gets Product Page Source Code - DE 39-19) |
| 69.     The product description for the Million Dollar Knot does not include the term "loops." | Altinsel Dec. ¶ 15 |
| 70.     The product description for Legacy Thread does not include the term "loops." | Altinsel Dec. ¶ 15 |
| 71.     The product description for the As Real As It Gets DVD Kit does not include the term "loops." | Altinsel Dec. ¶ 15, Deming Decl., Ex. R (As Real As It Gets Product Page - DE 39-18) |
| 72.     On each product page on the Penguin Magic website, the "keyword" meta field has the following fixed values: are "magic tricks, ""magic shops," "card tricks," "street magic," "levitation," "magic store," and "magic supplies." | Altinsel Dec. ¶ 15, Deming Decl., Ex. S (As Real As It Gets Product Page Source Code - DE 39-19) |
| 73.     On each product page on the Penguin Magic website, the "classification" meta field has the following fixed values: are "magic tricks," "magic shop," "card tricks," "street magic," "levitation," "card magic," "magic store," "magic supply," and "magic supplies." | Altinsel Dec. ¶ 15, Deming Decl., Ex. S (As Real As It Gets Product Page Source Code - DE 39-19) |
| 74.     Nowhere on the Penguin Magic website does the term "loops" appear as a "keyword" or "classification" meta value. | Altinsel Dec. ¶ 15 |
| 75.     The Million Dollar Knot is an instruction video that explained how to tie loops of invisible | Altinsel Dec. ¶ 13, Deming Decl., Ex. C at 24:12-25 |

13

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| elastic thread. | (Deposition of Yigal Mesika - DE 39-3) |
| 76.    Mesika does not allege that Penguin Magic passed off The Million Dollar Knot as his LOOPS product. | *See generally* Compl., DE 1 |
| 77.    Mesika complains that The Million Dollar Knot taught consumers how to "make" his product. | Deming Decl., Ex. C at 70:13-71:13 (Deposition of Yigal Mesika - DE 39-3) |
| 78.    Legacy Thread is a spool of invisible elastic thread. | Altinsel Dec. ¶ 13, Deming Decl., Ex. C at 33:11-34:7 (Deposition of Yigal Mesika - DE 39-3) |
| 79.    Legacy Thread is not loops of invisible elastic thread. | Altinsel Dec. ¶ 13, Deming Decl., Ex. C at 33:11-34:7 (Deposition of Yigal Mesika - DE 39-3) |
| 80.    Mesika does not allege that Penguin Magic sold Legacy Thread under the LOOPS Mark. | *See generally* Compl., DE 1 |
| 81.    Mesika complains that Penguin Magic touted Legacy Thread as a cheaper alternative to his LOOPS product. | Deming Decl., Ex. C at 33:11-34:7 (Deposition of Yigal Mesika - DE 39-3) |
| 82.    The As Real As It Gets DVD Kit consists of an instruction video together with physical gimmicks that can be used to perform the tricks taught by the instruction video. | Altinsel Dec. ¶ 13, Deming Decl., Ex. R (As Real As It Gets Product Page - DE 39-18), Ex. C at 117:4-118:15 (Deposition of Yigal Mesika - |

14

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | DE 39-3) |
| 83.    Mesika does not allege that Penguin Magic touted the As Real As It Gets DVD Kit as including Mesika LOOPS. | Deming Decl., Ex. C at 118:11-15 (Deposition of Yigal Mesika - DE 39-3) |
| 84.    Mesika complains that the instructional video in the As Real As It Gets DVD Kit referred to tied circles of invisible elastic bands as "loops" and the kit included generic loops of invisible elastic thread. | Deming Decl., Ex. T (Declaration of Yigal Mesika - DE 39-20) |
| 85.    For business reasons and to avoid the present dispute, Penguin Magic in good faith voluntarily changed what was a small portion of its practice and included Mesika LOOPS shortly after Mesika complained about the issue to Penguin Magic. | Altinsel Dec. ¶ 16, Deming Decl., Ex. C at 121:6-8 (Deposition of Yigal Mesika - DE 39-3) |
| 86.    Penguin Magic's decision to include Mesika LOOPS with the As Real As It Gets DVD Kit was not a concession as to the merits of Mesika's claim, but an accommodation intended to avoid an unnecessary and frivolous dispute. | Altinsel Dec. ¶ 16 |
| 87.    There is no evidence that the video referred to the invisible elastic thread that came with the kit as Mesika's LOOPS. | Altinsel Dec. ¶ 16 |
| 88.    Mesika owns the LOOPS Registrations. | Deming Decl., Ex. A (Registration No. 3,782,721 - DE 39-1), Ex. B (Registration |

15

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | No. 3,978,477 - DE 39-2), |
| 89. Mesika does not own any LOOPS trademark. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 90. Mesika never previously owned any LOOPS trademark. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 91. Mesika says he obtained "common law" trademark rights to the mark LOOPS from Finn Jon in 1998. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 92. Jon had allegedly been using the LOOPS Mark since 1986. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 93. The only documentation of any transfer of rights between Jon and Mesika is the 1998 Contract. | Deming Decl., Ex. C at 286:11-13, 307:1-308:3 (Deposition of Yigal Mesika - |

16

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | DE 39-3) |
| 94.    The parties to the contract are Mesika and Georges Proust of Paris, France. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 95.    Proust was the authorized representative or agent of Jon. | Deming Decl., Ex. M (1998 Contract - DE 39-13); Ex. C at 285:24-286:6 (Deposition of Yigal Mesika – DE 39-3) |
| 96.    Pursuant to the 1998 Contract, Proust granted to Mesika "permission to make and sell the Finn Jon's *Elastic Invisible Thread* for which Mr. Proust owns the rights and copyrights." | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 97.    The 1998 Contract did not transfer ownership of any rights to Mesika. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 98.    The 1998 Contract provided that "[i]t must be agreed that Mr. Proust remains **the one and only owner of the invention**. He doesn't give any exclusive right to Mr. Yigal Mesika, especially the right of reselling it." | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 99.    The 1998 Contract was a non-exclusive license to Mesika with a limited initial exclusivity period that has since expired. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 100.    Mesika repeatedly misrepresented his ownership of the "LOOPS" mark to the Trademark Office. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
|  | Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 101.   When he filed the application that would issue as Registration No. 3,782,721, Mesika identified himself as the owner of the LOOPS mark. | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 102.   When he filed the application that would issue as Registration No. 3,978,477, Mesika identified himself as the owner of the LOOPS mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 103.   In each submission in support of the application that would issue as Registration No. 3,782,721, Mesika identified himself as the owner of the LOOPS mark. | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 104.   In each submission in support of the application that would issue as Registration No. 3,978,477, Mesika identified himself as the owner of the LOOPS mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 105.   In his statement in support of the incontestability of Registration No. 3,782,721, | Deming Decl., Ex. V (Group Exhibit of Submissions |

18

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| Mesika identified himself as the owner of the LOOPS mark. | during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 106.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,782,721, Mesika stated that Finn Jon was his "predecessor in interest to the common law mark Loops." | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 107.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,978,477, Mesika stated that Finn Jon was his "predecessor in interest to the common law mark Loops." | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 108.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,782,721, Mesika argued that the LOOPS Mark had acquired distinctiveness through his efforts combined with those of Jon. | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 109.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,978,477, Mesika argued that the LOOPS Mark had acquired distinctiveness through his efforts combined with those of Jon. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 110.   During prosecution of the application that | Deming Decl., Ex. V (Group |

19

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| would issue as Registration No. 3,782,721, Mesika submitted a declaration of Jon allegedly confirming his transfer of rights to Mesika, and the mere retention of a license to use the product concurrently with Mesika. | Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 111.   During prosecution of the application that would issue as Registration No. 3,978,477, Mesika submitted a declaration of Jon allegedly confirming his transfer of rights to Mesika, and the mere retention of a license to use the product concurrently with Mesika. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 112.   The Jon declaration submitted during prosecution of the application that would issue as Registration No. 3,782,721 contradicted the plain language of the 1998 Contract. | Deming Decl., Ex. M (1998 Contract - DE 39-13), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 113.   The Jon declaration submitted during prosecution of the application that would issue as Registration No. 3,978,477 contradicted the plain language of the 1998 Contract. | Deming Decl., Ex. M (1998 Contract - DE 39-13), Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 114.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,782,721, Mesika | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of |

20

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| argued that "millions of dollars" had been spent advertising the LOOPS product. | Registration No. 3,782,721 - DE 39-22) |
| 115.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,978,477, Mesika argued that "millions of dollars" had been spent advertising the LOOPS product. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 116.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,782,721, Mesika argued that direct retail sales had amounted to "approximately $1.5 million in the same period." | Deming Decl., Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 117.   In a response to an office action issued during prosecution of the application that would issue as Registration No. 3,978,477, Mesika argued that direct retail sales had amounted to "approximately $1.5 million in the same period." | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 118.   During discovery in this case, Mesika failed to provide documentation of anything resembling millions of dollars in advertising or annual sales. | Deming Decl., Ex. C at 329:21-336:2 (Deposition of Yigal Mesika - DE 39-3) |
| 119.   During discovery in this case, Mesika produced during discovery evidence of no more than tens of thousands of dollars in advertising and hundreds of thousands of dollars in sales. | *See generally* Compl., DE 1. |
| 120.   The only advertising and sales evidence produced by Mesika during discovery in this case | *See generally* Compl., DE 1., Ex. V (Group Exhibit of |

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| postdate his submissions during prosecution of the application that would issue as Registration No. 3,782,721. | Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 121.   The only advertising and sales evidence produced by Mesika during discovery in this case postdate his submissions during prosecution of the application that would issue as Registration No. 3,978,477. | *See generally* Compl., DE 1., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21) |
| 122.   Mesika has no right to exercise any control over Jon's use of the LOOPS mark. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 123.   Mesika does not exercise any control over Jon's use of the LOOPS mark. | Deming Decl., Ex. G (Mesika Admissions No. 195, 196) |
| 124.   Under the terms of the 1998 Contract, it is Jon or Proust who have the right to supervise and inspect the quality of Mesika's products. | Deming Decl., Ex. M (1998 Contract - DE 39-13) |
| 125.   Mesika disparages the quality of other loops of elastic thread, including Finn Jon's loops, yet he does nothing to stop Finn Jon from selling allegedly inferior loops. | Deming Decl., Ex. C at 217:19-220:12, 228:4-230:7 |
| 126.   Mesika has no published policies or procedures about the use of the LOOPS mark with which Jon could voluntarily comply. | Deming Decl., Ex. G (Mesika Admissions No. 195, 196) |
| 127.   Mesika and Jon do not have a close working relationship. | Deming Decl., Ex. W at 3 (Amended Initial Disclosures - DE 39-23) |

| Uncontroverted Facts | Supporting Evidence |
| --- | --- |
| 128.   Mesika and Jon not share sources for invisible elastic thread. | Deming Decl., Ex. C at 217:19-220:12, 228:4-230:7 (Deposition of Yigal Mesika - DE 39-3) |
| 129.   Mesika does not manufacture invisible elastic thread for Jon. | Deming Decl., Ex. C at 217:19-220:12, 228:4-230:7 (Deposition of Yigal Mesika - DE 39-3) |
| 130.   Jon does not manufacture invisible elastic thread for Mesika. | Deming Decl., Ex. C at 217:19-220:12, 228:4-230:7 (Deposition of Yigal Mesika - DE 39-3) |
| 131.   Mesika contends Jon's LOOPS product is of an inferior quality to his own. | Deming Decl., Ex. C at 217:19-220:12, 228:4-230:7 (Deposition of Yigal Mesika - DE 39-3) |
| 132.   Mesika threatened a competitor that based on Mesika's alleged ownership of the trademark "Invisible Elastic Bands." | Deming Decl., Ex. C at 29:22-30:5, 355:7-357:6 (Deposition of Yigal Mesika - DE 39-3) |
| 133.   Mesika did not then and does not now own a trademark for "Invisible Elastic Bands." | Deming Decl., Ex. C 29:22-30:5, 355:7-357:6 (Deposition of Yigal Mesika - DE 39-3) |
| 134.   Mesika made false statements to the Trademark Office about his ownership of the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of |

23

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 135.   Mesika knew his statements about his ownership of the LOOPS Mark were false. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 136.   Mesika intended the Trademark Office to rely on his misrepresentation of his ownership of the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 137.   The Trademark Office reasonably relied on Mesika's statements about his ownership of the | Deming Decl., Ex. U (Group Exhibit of Submissions |

24

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| LOOPS Mark. | during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 138.   Mesika's misrepresentation about his ownership of the LOOPS Mark was material because without it the Trademark Office would not have issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | 37 C.F.R. § 2.71 |
| 139.   Damages were caused by Mesika's misrepresentation of his ownership of the LOOPS Mark because the Trademark Office issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 140.   Mesika made false statements to the Trademark Office about the amount of sales of products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF PENGUIN MAGIC'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-CV-9314-RGK-DTB

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 141.   Mesika knew his statements about the amount of sales of products bearing the LOOPS Mark were false. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 142.   Mesika intended the Trademark Office to rely on his misrepresentation of the amount of sales of products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 143.   The Trademark Office reasonably relied on Mesika's statements about the amount of sales of products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 144.   Mesika's misrepresentation about the amount of sales of products bearing the LOOPS Mark was material because without it the Trademark Office would not have issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | 37 C.F.R. § 2.41 |
| 145.   Damages were caused by Mesika's misrepresentation of the amount of sales of products bearing the LOOPS Mark because the Trademark Office issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 146.   Mesika made false statements to the Trademark Office about advertising spent on products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions |

27

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 147.   Mesika knew his statements about the advertising spent on products bearing the LOOPS Mark were false. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 148.   Mesika intended the Trademark Office to rely on his misrepresentation of the advertising spent on products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 149.   The Trademark Office reasonably relied on Mesika's statements about the advertising spent on products bearing the LOOPS Mark. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 150.   Mesika's misrepresentation about the advertising spent on products bearing the LOOPS Mark was material because without it the Trademark Office would not have issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | 37 C.F.R. § 2.41 |
| 151.   Damages were caused by Mesika's misrepresentation of advertising spent on products bearing the LOOPS Mark because the Trademark Office issued Registration Nos. 3,782,721 and 3,978,477 to Mesika. | Deming Decl., Ex. U (Group Exhibit of Submissions during Prosecution of Registration No. 3,978,477 - DE 39-21), Ex. V (Group Exhibit of Submissions during Prosecution of Registration No. 3,782,721 - DE 39-22) |
| 152.   Penguin Magic requested by way of interrogatory a detailed statement forming the bases of Mesika's claims. | Deming Decl., Ex. X (Interrogatory Answers - DE 39-24) |
| 153.   In response to Penguin Magic's interrogatory requested a detailed statement for Mesika's claims, Mesika stated that Penguin Magic had "(1) advertised and marketed; (2) | Deming Decl., Ex. X (Interrogatory Answers - DE 39-24) |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| offered to sell; and (3) sold "products under the trademark 'Loops' without authorization and contrary to [Mesika's] exclusive right." | |
| 154.   In response to Penguin Magic's interrogatory requested a detailed statement for Mesika's claims, Mesika did not identify any actual false statements or state how they were deceiving to consumers. | Deming Decl., Ex. X (Interrogatory Answers - DE 39-24) |
| 155.   In response to Penguin Magic's interrogatory requested a detailed statement for Mesika's claims, Mesika stated that Penguin Magic had used LOOPS as a keyword or meta tag on its website, but failed to identify on what pages those tags were used or how they were deceptive in that context. | Deming Decl., Ex. X (Interrogatory Answers - DE 39-24) |
| 156.   The 1998 Contract was produced for the first time on September 13, 2016 at the deposition of Yigal Mesika. | Deming Decl. ¶ 15 |

## CONCLUSIONS OF LAW

| Conclusions of Law | Supporting Law |
|---|---|
| 1.   A court may enter summary judgment where there are no genuine issues of material fact. | *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994); Fed. R. |

| Conclusions of Law | Supporting Law |
|---|---|
| | Civ. P. 56(c). |
| 2.     On a motion for summary judgment, The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party. | *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). |
| 3.     The elements of trademark infringement are (1) ownership in a valid, protectable trademark; and (2) use of a competing mark by an alleged infringer that is likely to cause consumer confusion. | *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). |
| 4.     "[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." | *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994). |
| 5.     A party lacks standing to sue for trademark infringement if it does not own the trademark at issue. | *Gaia Techs. v. Reconversion Techs.*, 93 F.3d 774, 777 (Fed.Cir.1996). |
| 6.     A federal registration is only prima facie evidence that the registrant is the owner of the mark, and it may be rebutted by a showing that the registrant has not established valid ownership rights in the mark at the time of registration. | *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220 (9th Cir. 1996); 15 U.S.C. § 1057(b). |
| 7.     Mesika does not have standing to bring actions based on such alleged ownership | *Gaia Techs. v. Reconversion Techs.*, 93 F.3d 774, 777 (Fed.Cir.1996). |

31

| **Conclusions of Law** | **Supporting Law** |
|---|---|
| 8.      A generic name for a product can never serve as a trademark. | *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). |
| 9.      The term "loops" is generic for any loop of invisible elastic thread. | *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 977 (9th Cir. 2010). |
| 10.      A trademark registration may be cancelled for fraud on the Trademark Office when (1) the registrant made a false representation regarding a material fact; (2) the registrant knew the representation was false; (3) the registrant intended to induce reliance upon the misrepresentation; (4) there was actual, reasonable reliance on the misrepresentation; and (5) damages were proximately caused by that reliance. | *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990). |
| 11.      Mesika obtained Registration Nos. 3,782,721 and 3,978,477 by fraud. | *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990). |
| 12.      "'Naked licensing' occurs when the licensor fails to exercise adequate quality control over the licensee." | *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010). |
| 13.      "[N]aked licensing is inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor." | *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010). |
| 14.      "[W]here the licensor fails to exercise adequate quality control over the licensee, a court | *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 |

32

| Conclusions of Law | Supporting Law |
|---|---|
| may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." | F.3d 589, 596 (9th Cir. 2002). |
| 15.   Mesika has engaged in naked licensing of the LOOPS Mark. | *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002). |
| 16.   Nominative fair use is a doctrine that protects a defendant "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." | *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306–08 (9th Cir. 1992). |
| 17.   "Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." | *Am. Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 585 (9th Cir. 2005). |
| 18.   Under the first sale doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." | *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) |
| 19.   "Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." | *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) |
| 20.   Penguin Magic's sale of products made by | *Toyota Motor Sales, U.S.A.,* |

33

| Conclusions of Law | Supporting Law |
|---|---|
| Mesika purchased through Mesika's authorized distributors is not an act of trademark infringement or unfair competition. | *Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010); *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) |
| 21.     Penguin Magic's use of the LOOPS Mark in association with The Million Dollar Knot is protected under the doctrine of nominative fair use. | *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306–08 (9th Cir. 1992). |
| 22.     Penguin Magic's use of the LOOPS Mark in association with Legacy Thread is protected under the doctrine of nominative fair use. | *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306–08 (9th Cir. 1992). |
| 23.     Penguin Magic's use of the LOOPS Mark in association with the As Real As It Gets DVD Kit is protected under the doctrine of nominative fair use. | *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306–08 (9th Cir. 1992). |
| 24.     The elements of the elements of federal unfair competition under the Lanham Act  are "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the | *Southland Sod Farms v. Sover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997). |

34

| Conclusions of Law | Supporting Law |
|---|---|
| defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." | |
| 25.   It is unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." | Bus. & Prof. Code § 17500 |
| 26.   Mesika has failed to allege facts sufficient to state claims for Lanham Act unfair Competition or False Advertising under Bus. & Prof. Code § 17500. | *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F.Supp.2d 1074, 1085 (C.D. Cal. 2010); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, Case No. 10CV974 DMS CAB, 2011 WL 1630809, at *5 (S.D. Cal. Apr. 28, 2011) |
| 27.   "The court in exceptional cases may award reasonable attorney fees to the prevailing party." | 15 U.S.C. § 1117(a). |
| 28.   This is an exceptional case for which reasonable attorneys' fees should be awarded to Penguin Magic. | *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012). |

Dated:  September 28, 2016        By:  /s/Todd Malynn
                                       POLSINELLI PC

## **CERTIFICATE OF SERVICE**

I certify that on September 28, 2016, the foregoing document was served on Plaintiffs' counsel of record by operation of the Court's CM/ECF system.


By:  /s/Todd Malynn
     POLSINELLI PC

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF PENGUIN MAGIC'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-CV-9314-RGK-DTB